IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REGGIE FORNEY, on behalf of herself and all other plaintiffs similarly situated, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No.: 05 C 6257 ) ) Suzanne B. Conlon, Judge |
| TTX COMPANY and TIM LOEFFLER, individually, | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Reggie Forney filed this putative collective action against her former employer, TTX Company, and her former supervisor, Tim Loeffler, alleging violations of common law, as well as federal and state labor statutes, including the Fair Labor Standards Act ("the FLSA"), 29 U.S.C. § 201, *et seq.* She moves to authorize notice to similarly situated employees under 29 U.S.C. § 216(b). For the reasons set forth below, the motion is denied.

## BACKGROUND

TTX is a railcar service company with over 1,500 employees. Defs. Mem. at 1. Headquartered in Chicago, TTX services over 127,000 railcars located across the United States. Defs. Ex. 13, Kane Aff. Ex. 11 at 2. In addition to its repair shops in California, Florida, and South Carolina, TTX provides field maintenance services at over 30 other locations. *Id.* at 2-5 According to TTX, 25 employees work in 20 accounting related positions. Defs. Mem. at 4. These positions are divided between two departments and are located in four states; each accounting position has its own distinct job duties. *Id.*

Forney began working at TTX in 1989. Pl. Ex. A, Forney Aff. at ¶ 1. She became a receivables accountant in 1995, and then a maintenance accountant in 1999. *Id.* at ¶¶ 1, 8. Except for working as a field maintenance accountant for three months, she remained a maintenance accountant until September 2005, when she was terminated. *Id.* at ¶¶ 1, 6. Since 1995, she was not paid overtime wages because TTX classified her positions as exempt from FLSA's overtime wage provisions. *Id.* at ¶¶ 3, 5, 7. She claims TTX's classifications violated the FLSA. Alleging other accounting positions were also misclassified, she seeks to represent all past and present TTX employees with job titles of: (1) staff accountant; (2) general accountant; (3) cost accountant; (4) inventory accountant; (5) field maintenance accountant; (6) receivables accountant; or (7) maintenance accountant. First Am. Compl. at ¶ 19.

Forney alleges TTX's accounting positions required similar educational qualifications. To support her allegation, she submits TTX's job descriptions and job analysis questionnaires for cost accountants, inventory accountants, maintenance accountants, and receivables accountants. According to these documents, all four accounting classifications required a bachelor's degree or one to two years of related experience. Pl. Ex. B, Hilbert Aff. Exs. 3-5. But each position may require different internal training. *See* Defs. Ex. 9, Kane Aff. Ex. 6 at 319:8-20.

Forney states she did mostly data entry in all three accounting positions. Her duties as a maintenance accountant included: (1) entering data to a computer program and spreadsheets; (2) choosing an appropriate function on a computer program to generate reports; (3) generating automated reports; (4) entering amounts and job codes to a general ledger; and (5) reviewing reports to ensure accuracy of job code entries. Pl. Ex. A, Forney Aff. at ¶ 2. As a receivables accountant, she was responsible for entering check amounts into a computer program and for adding up receipts

2

to ensure accuracy of accounting reports. *Id.* at ¶ 4. Her duties as a field maintenance accountant primarily involved data entry for billing purposes. *Id.* at ¶ 6. According to Loeffler's testimony, Forney's journal entries were subject to review and approval. Pl. Ex. B, Hilbert Aff. Ex. 10 at 258:16-259:11. She had no authority to deviate from established policies or procedures. *Id.* at 269:6-14. Nor could she represent TTX on significant matters. *Id.* at 269:15-17.

Based on these similarities in educational qualifications and job duties, Forney claims she and other TTX accountants were similarly situated. She seeks approval of a proposed notice to potential claimants. In addition, she seeks an order directing defendants to disclose the names and addresses of all FLSA-exempt employees who had job titles containing the term "accountant," or performed accounting duties, within the last three years.

## DISCUSSION

### I. Legal Standard

FLSA plaintiffs may bring a collective action on behalf of themselves "and other employees similarly situated." 29 U.S.C. § 216(b). Neither the FLSA nor its accompanying regulations define the term "similarly situated." Certification of a FLSA collective action is subject to a two-step *ad hoc* inquiry. *See, e.g., Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001); *Gambo v. Lucent Techs., Inc.*, No. 05 C 3701, 2005 WL 3542485, at *4 (N.D. Ill. Dec. 22, 2005) (Filip, J.) ("[t]his two-step method has been used by a number of [courts]") (collecting cases). At step one, plaintiffs are required to make a modest showing that similarly situated employees exist. *Id.* Upon meeting this requirement, plaintiffs are authorized to send notice to potential claimants, who may opt-in by filing a written consent. *Id.* at *3. At step two, which typically occurs after discovery, defendants move to deny certification of collective action. *Id.* at *4. To maintain a

3

collective action, plaintiffs must overcome a stringent evidentiary hurdle of demonstrating they are in fact similarly situated as the opt-in claimants. *Id.*

## II. Similarly Situated Employees

The FLSA exempts from its overtime wage provisions certain executive, administrative, or professional employees.[1] 29 U.S.C. § 213(a)(1). Regulations interpreting § 213 set forth detailed requirements for the exemptions. 29 C.F.R. §§ 541.0-304. Forney's claims, as well as those of potential claimants, will turn on whether their "salar[ies] and duties meet the [exemption] requirements of the regulations." 29 C.F.R. § 541.2. Thus, to demonstrate the existence of potential claimants, Forney must come forth with evidence indicating her salary and duties were similar to those of other TTX accountants.

Forney fails to show there are similarly situated accountants. Her own affidavit indicates her duties in each accounting position were different. Pl. Ex. A, Forney Aff. at ¶¶ 2, 4, 6. For example, as a maintenance accountant, she reviewed maintenance accounts and posted entries to a general ledger; as a field maintenance accountant, she mainly processed billing. *Id.* at ¶¶ 2, 6. She acknowledges that a maintenance accountant had to train to become an inventory accountant; this admission highlights the differences between positions. Defs. Ex. 9, Kane Aff. Ex. 6 at 319:8-20. Most importantly, she fails to identify a single TTX employee who performed duties similar to hers. As a result, she cannot satisfy the evidentiary burden at step one of the *ad hoc* inquiry. *See Pfaahler*

---

[1] TTX classified the majority of its accountants as exempt administrative or professional employees. Pl. Ex. B, Hilbert Aff. Ex. 2. Without any legal support, Forney argues that once it classified an accountant under one of the three exemptions, TTX is estopped from claiming a different exemption for that accountant. This argument lacks merit because TTX is free to defend its classification on alternative theories. *See, e.g., Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 531 (7th Cir. 1999) (allowing employer to claim either administrative or professional exemption or both).

*v. Consultants for Architects, Inc.*, No. 99 C 6700, 2000 WL 198888, at *2 (N.D. Ill. Feb. 8, 2000) (Conlon, J.) (denying conditional certification because plaintiff "makes no showing that other potential claimants performed the same type of duties as himself"); *see also Pfohl v. Farmers Ins. Group*, No. CV03-3080, 2004 WL 554834, at *9 (N.D. Cal. Mar. 1, 2004) (Tevrizian, J.) (same).

Forney argues that TTX's job descriptions uniformly required a bachelor's degree for four accounting positions. Pl. Ex. B, Hilbert Aff. Exs. 3-5. She contends these positions were misclassified as exempt because their educational requirements fell below the "advance knowledge" standard for professional exemption under 29 C.F.R. § 541.300(a). She concludes all TTX accountants were similarly situated because they were subject to the same educational requirements.

Forney's reliance on job descriptions is unpersuasive. Whether similarly situated employees exist depends on the employees' actual qualifications and day-to-day duties, rather than their job descriptions. *Schaefer v. Ind. Mich. Power Co.*, 358 F.3d 394, 400 (6th Cir. 2004); *see also Smith v. Heartland Auto. Servs., Inc.*, 404 F. Supp. 2d 1144, 1151 (D. Minn. 2005) ("[FLSA plaintiffs] may not rely on the job description itself as generalized evidence that they are [misclassified] as exempt employees"). Forney fails to identify a single TTX accountant whose educational qualifications fell below the regulatory requirements for professional exemption. She therefore cannot clear the evidentiary hurdle at step one of the *ad hoc* inquiry. *Pfaahler*, 2000 WL 198888, at *2. Even assuming she passes step one, certification of a collective action would require determination on whether each potential claimant's qualifications satisfy the regulatory requirements. This determination would be fact-intensive and individualized. Where individualized determinations are required, certification of a FLSA collective action is inappropriate. *Reich v. Homier Distrib. Co., Inc.*, 362 F. Supp. 2d 1009, 1013-14 (N.D. Ind. 2005) ("[m]any other courts, both in this circuit and

others, have declined to find potential class members similarly situated where liability depended on an individual determination of each employee's duties") (collecting cases).

## III. The "Make Up Time" Policy

Forney submits a copy of a TTX human resources policy authorizing supervisors to "require exempt employees . . . 'make up' time lost to absences." Pl. Ex. B, Hilbert Aff. Ex. 11 at 1. She claims this policy violated the FLSA. Because she and other exempt employees were subject to the same violation of FLSA policy, she argues they are similarly situated. In her first amended complaint, she did not allege any injury resulting from this policy. She therefore has no standing to sue. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (plaintiff must allege injury in fact). As a result, she cannot represent a collective group on claims arising from the purported policy. *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (a class representative "must be part of the class"). Moreover, mere existence of a policy does not require certification of a FLSA collective action. *Pfohl*, 2004 WL 554834, at *9. Thus, Forney's argument based on TTX policy is without merit.

## CONCLUSION

For the reasons set forth above, Forney's motion to authorize notice to purportedly similarly situated employees is denied.

ENTER:

Suzanne B. Conlon
United States District Judge

April 17, 2006

6